UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
  AL-FATAH S. STEWART,                  :
                    Plaintiff,           :
                                          :
  v.                                        :
                                          :
  LT. RICHARDSON; SGT. LACONEY; C.O.    :
  HOLZAPFEL; C.O. C. PERRY; C.O.           :
  GENEVES; SGT. WYMAN; LT. MAXWELL;    :
  C.O. VANDERKOOY; DEPUTY            :
  SUPERINTENDENT OF ADMINISTRATION    :
  GAIL WILLIAMS; IMAM ENCARNATION,    :
  MEDIA REVIEW; DR. WOODS, EDUCATION   :
  SUPERVISOR, MEDIA REVIEW;           :
  HENDRICKSON, MEDIA REVIEW; C.O.      :
  SANDELL; C.O. SANTANA; CAPTAIN       :
  SIPPLE; GUIDANCE COUNSELOR DEWITT;   :
  *all individually and in their own official capacity*,   :
                  Defendants.     :
--------------------------------------------------------------x

**<u>OPINION AND ORDER</u>**

15 CV 9034 (VB)

<u>Briccetti, J.</u>:

      Plaintiff Al-Fatah S. Stewart, an inmate proceeding <u>pro se</u> and <u>in forma pauperis</u>, brings this action under 42 U.S.C. § 1983, claiming defendants committed various violations of federal law against him while he was incarcerated at Sullivan Correctional Facility ("Sullivan"). Plaintiff sued defendants Lieutenant Richardson; Sergeant Laconey; Corrections Officer Holzapfel; Corrections Officer C. Perry; Corrections Officer Geneves; Sergeant Wyman; Lieutenant Maxwell; Corrections Officer Vanderkooy; Deputy Superintendent of Administration Gail Williams; Imam Encarnation, Media Review; Dr. Woods, Education Supervisor, Media Review; Hendrickson, Media Review; Corrections Officer Sandell; Corrections Officer Santana; Captain Sipple; and Guidance Counselor Dewitt, all of whom were employed at Sullivan.

Plaintiff asserts claims for retaliation for engaging in constitutionally protected conduct, violations of his religious rights, conspiracy to violate his constitutional rights, denial of his access to the courts, and infliction of cruel and unusual punishment.

Now pending is defendants' motion to dismiss pursuant to Rule 12(b)(6).  (Doc. #47).

For the reasons set forth below, the motion is DENIED as to (i) all retaliation claims, (ii) the First Amendment claim against Imam Encarnation, (iii) the First Amendment claim against Lt. Maxwell for holding plaintiff's bible; (iv) the claim of denial of access to the courts for confiscating plaintiff's legal work; and (v) the claim of cruel and unusual punishment against Dewitt.

The motion is GRANTED as to (i) the First Amendment claims against Capt. Sipple, Dr. Woods, and Hendrickson, (ii) the First Amendment claim against Lt. Maxwell for general responsibility for violations, (iii) the equal protection claim against Lt. Maxwell and C.O. Vanderkooy, (iv) the claims for violations of Religious Land Use and Institutionalized Persons Act ("RLUIPA"), (v) the conspiracy claim, (vi) the claim for denial of access to the courts for not receiving legal envelopes, and (vii) the claims for cruel and unusual punishment against all defendants except Dewitt.

Furthermore, plaintiff is granted leave to amend his complaint only as to: (i) the First Amendment claim against Capt. Sipple, (ii) the First Amendment claim against Lt. Maxwell for general responsibility for violations, (iii) the claim for denial of access to the courts for not receiving legal envelopes, (iv) the claims for cruel and unusual punishment, and (v) the claims defendants did not move to dismiss.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the complaint and plaintiff's other court filings, and draws all reasonable inferences in plaintiff's favor.

Plaintiff alleges that, at some point in 2015, he mailed a letter to every person on a list of New York public servants he found in Sullivan's law library.  In this letter, plaintiff sought to solicit help to investigate his allegedly wrongful conviction.  Melissa Abt, an employee at Otisville Correctional Facility and the wife of Lt. Richardson's friend, was one recipient of this letter.

Plaintiff contends Lt. Richardson began a campaign to retaliate against him for sending the letter to Ms. Abt.  On August 6, 2015, Lt. Richardson allegedly directed Sgt. Laconey to search plaintiff's cell to inquire as to why plaintiff sent the letter to Ms. Abt.  Plaintiff states Lt. Richardson directed Sgt. Laconey and C.O. Holzapfel "to tear plaintiff's cell apart."  (Compl. at 4).  Plaintiff also alleges Sgt. Laconey and C.O. Holzapfel confiscated "legal work, three active claims, a[n] active [New York State Criminal Procedure Law § 440] motion, complaints . . . [of] sexual harassment, [and] sixty six photos of loved ones," and that they "threw numerous other items of Plaintiff's away without giving Plaintiff the opportunity to choose whether to donate or send these items home."  (Compl. at 4).

Plaintiff allegedly complained to the area sergeant on duty, Sgt. Wyman, that the search was against prison policy.  Sgt. Wyman responded, "why are you wasting time talking to me when you should be cleaning that mess up."  (Compl. at 3).  Sgt. Wyman did not investigate plaintiff's complaint.  Plaintiff allegedly filed complaints with non-defendant prison officials, which were dismissed as without merit.

On August 8, 2015, at the direction of Lt. Richardson, C.O. Holzapfel allegedly ordered plaintiff to bring all of his property to the "draft room just so C.O. Holzapfel could destroy more of [plaintiff's] property." (Compl. at 4). On August 12, 2015, Lt. Maxwell allegedly sent C.O. Vanderkooy to search plaintiff's cell. "C.O. Vanderkooy confiscated Plaintiff's Bible (The Complete Book Of Witchcraft, By Raymond Buckland) that possessed photographs of [plaintiff's] deceased loved ones, spells written by family members and other items of religious sentimental value[, which was] sent to Plaintiff by his mother." (Compl. at 3–4). C.O. Vanderkooy allegedly acted "out of pure hatred for Plaintiff's religious belief (Wicca) and in an effort to try to get Plaintiff to snap." (Compl. at 3).

Plaintiff alleges his bible was repeatedly transferred among various persons and places, including Lt. Maxwell, Capt. Sipple, and "media review." Plaintiff was required to mail his bible home because it was unauthorized literature that served no penological interest. In response, plaintiff filed a series of complaints and grievances to various entities at and outside Sullivan.

Plaintiff states that on September 9, 2015, in retaliation for plaintiff filing these complaints and grievances, Lt. Richardson instructed Sgt. Laconey, C.O. Santana, C.O. Sandell, and C.O. Perry to plant a sharpened toothbrush in the vent of plaintiff's cell to "set up" plaintiff. As punishment for possessing a weapon, plaintiff was held in the Special Housing Unit ("SHU") for forty-four days. Plaintiff complained to Dewitt and asked Dewitt to inform plaintiff's family because plaintiff felt he was in life-threatening danger.

Plaintiff alleges a litany of poor conditions while housed in SHU. He was denied sufficient food to eat and envelopes to send his legal mail. He was subjected to bright lights from 6:00 a.m. to 7:30 p.m., and a high-beam flashlight was shone in his eyes every thirty

minutes while he slept.  He was "intentionally housed between a serial rapist sexual deviant . . . and another inmate who is a deaf mute psychopath who throws feces and urine, kicks the gates[,] walls[,] and toilet all day and all night, [and] tosses food and feces on the gallery."  (Compl. at 7).  Moreover, he "was forced to sleep on the floor because the bed in plaintiff's cell is connected to the bed in this [inmate's] cell and this inmate jumped on his bed all day and night."  (Compl. at 7).  Finally, he was separated from his mother by Plexiglas during a visit on October 10, 2015. Plaintiff's treatment in SHU allegedly caused him to lose eight pounds and to suffer severe mental, physical, and psychological harm.

**DISCUSSION**

I.    <u>Legal Standard</u>

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court evaluates the sufficiency of the complaint under the "two-pronged approach" outlined by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678.  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Id</u>. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id.

The Court must liberally construe submissions[1] of pro se litigants, and interpret them "to raise the strongest arguments that they suggest."  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a pro se case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

## II.   Retaliation for Engaging in Protected Conduct

Plaintiff claims various defendants illegally retaliated against him for sending the letter to Ms. Abt and for filing complaints and grievances.  Plaintiff alleges two general forms of retaliation, and defendants lodge separate arguments against each form.  Accordingly, the Court will address each separately.

---

[1]   "Although the Court is typically confined to the allegations contained within the four corners of the complaint, when analyzing the sufficiency of a pro se pleading, a court may consider factual allegations contained in a pro se litigant's opposition papers and other court filings."  Rodriguez v. Rodriguez, 2013 WL 4779639, at *1 (S.D.N.Y. July 8, 2013) (citation and internal quotations marks omitted).  Plaintiff will be provided with copies of all unpublished opinions cited in this decision.  See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

First, plaintiff claims Lt. Richardson, Sgt. Laconey, C.O. Santana, C.O. Sandell, and C.O. Perry planted a weapon in plaintiff's cell to justify mistreating him under the guise of punishment for possessing a weapon, and that C.O. Geneves falsified logs as a part of this effort.

Second, plaintiff claims Lt. Richardson, Sgt. Laconey, and C.O. Holzapfel retaliated against him by searching his cell and confiscating his personal property.

To state a First Amendment retaliation claim, plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted). Regarding this second element, "'only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action.'" Nelson v. McGrain, 596 F. App'x 37, 38 (2d Cir. 2015), (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).

A.     Planting a Weapon and Falsifying Logs

Plaintiff alleges that on September 9, 2015, Lt. Richardson instructed Sgt. Laconey, C.O. Santana, C.O. Sandell, and C.O. Perry to plant a sharpened toothbrush in plaintiff's cell.  He also alleges C.O. Geneves falsified logs related to this incident.  He alleges they did this to retaliate against him for sending the letter to Ms. Abt and for filing various complaints and grievances.

Defendants argue the claims against C.O. Geneves must be dismissed because plaintiff does not allege animus on the part of C.O. Geneves, and because plaintiff does not allege any detrimental consequence of the falsified log entry.

The Court disagrees with both arguments.

First, defendants assert no authority for the proposition that animus is a required element for a retaliation claim and, as stated above, it is not.

Second, plaintiff does allege a detrimental consequence: he was held in SHU for forty-four days before he received a hearing in which the reviewer determined the evidence supporting the weapon-possession charge was insufficient.  Defendants argue that because plaintiff eventually received a hearing and the charge was dismissed, he suffered no adverse consequence. Defendants rely on two non-precedential cases, both of which are factually inapposite: Johnson v. Barney, 360 F. App'x 199, 201 (2d Cir. 2010) (summary order), and JCG v. Ercole, 2014 WL 1630815, at *34[2] (S.D.N.Y. Apr. 24, 2014) report and recommendation adopted, 2014 WL 2769120 (S.D.N.Y. June 18, 2014).

In Johnson v. Barney, the court assumed the parties familiarity with the underlying facts, and there is no indication from that opinion, or the underlying opinions[3] the decision reviews, indicating the plaintiff was subjected to any adverse consequence as a result of the allegedly falsified complaint against him.  360 F. App'x at 201.  In JCG v. Ercole, the fabricated allegations were made by other inmates rather than prison employees, and the plaintiff was not bringing a claim of retaliation for engaging in protected conduct.

Defendants' inapposite dicta from non-precedential cases do not persuade the Court.

Next, defendants argue this claim must be dismissed because "plaintiff does not allege who these complaints and grievances were against, when and to whom he sent them, and why

---

[2]      Defendants cite to page "*123."  This document does not include a page *123, but language defendants quote appears on page *34.

[3]      Johnson v. Barney, 2007 WL 2597666, (S.D.N.Y. Aug. 30, 2007), aff'd, 360 F. App'x 199; Johnson v. Barney, 2006 WL 3714442, at *1 (S.D.N.Y. Dec. 13, 2006), adhered to on denial of reconsideration, 2007 WL 900977 (S.D.N.Y. Mar. 22, 2007), and aff'd, 360 F. App'x 199.

these Defendants retaliated against him for these unspecified complaints and grievances." (Doc. #48 at 16). Defendants argue that plaintiff's allegations are conclusory and therefore insufficient.

The Court disagrees.

The Court is aware of no requirement that plaintiff specifically allege the objects and recipients of complaints, when plaintiff sent them, or the reason defendants retaliated. However, the Court need not determine whether such a requirement exists, because plaintiff does allege these facts.

For example, plaintiff alleges that, on August 6, 2015, Sgt. Laconey questioned him about his letter to Ms. Abt, and that, in retaliation for that letter, Sgt. Laconey and C.O. Holzapfel destroyed his cell and took his legal documents and other property. Following these allegations, plaintiff specifically states: "Plaintiff filed complaints to DSA Williams, DSP Smith-Roberts, Office of Special Investigation, Commissioner Anthony Annucci, grievances to Inmate Grievance resolution committee, and an institutional Claim." (Compl. at 4).

Moreover, plaintiff attaches as exhibits to his complaint many of his complaints and grievances. These attached documents are very detailed and contain specific allegations, dates, recipients, and other pertinent information to substantiate plaintiff's claims.

Because the factual basis for defendants' argument is unsupported, the Court need not address the merits of defendants' legal argument for dismissal.

Accordingly, plaintiff has sufficiently alleged retaliation, and therefore defendants' motion to dismiss this claim is denied.

B.    Cell Searches and Destruction of Property

Plaintiff alleges Lt. Richardson, Sgt. Laconey, and C.O. Holzapfel searched his cell and confiscated and destroyed his personal property in retaliation for his having sent the letter to Ms. Abt, and for filing various grievances and complaints.

Defendants argue these allegations fail to state a claim because, as a matter of law, cell searches are not an adverse action for the purposes of a First Amendment retaliation claim, and destruction of personal property claims must be pursued in state court.  In so doing, the defendants separate the allegations into individual harms and argue each, in isolation, is insufficient to state a claim.

Defendants provide no authority to support their argument that the Court can or should analyze each type of harm separately.  Indeed, the case defendants cite for the proposition that plaintiff has no right to be free from retaliatory cell searches – Rodriguez v. McClenning, 399 F. Supp. 2d 228, 239 (S.D.N.Y. 2005) – demonstrates the opposite approach.  In Rodriguez, the court noted that a cell search alone is not actionable, but then combined the search with other wrongful conduct and held such allegations state a claim.  Id. at 239–240 ("At the same time [that Rodriguez cannot state a claim based only on retaliatory cell searches], Rodriguez can assert a retaliation claim for McClenning's conduct in conjunction with the cell search."); see also, Guillory v. Haywood, 2015 WL 268933, at *21 (N.D.N.Y. Jan. 21, 2015) ("Even though district courts have found that cell searches alone are not actionable under § 1983, even if retaliatory, allegations that a defendant confiscated personal property . . . during the course of a cell search have been found sufficient to deter an inmate of ordinary firmness from exercising his constitutional rights.").

Considered collectively, as they ought to be, plaintiff's allegations of retaliatory cell searches and destruction of his property are sufficient to state a claim.

Accordingly, defendants' motion to dismiss plaintiff's retaliation claim based on cell searches and property destruction is denied.

III.   <u>Religious Rights</u>

Plaintiff claims defendants, in confiscating his religious material, violated his rights secured by the free exercise clause of the First Amendment, and thus he is entitled to damages under Section 1983 and RLUIPA.[4]  Specifically, plaintiff alleges Lt. Maxwell sent C.O. Vanderkooy to plaintiff's cell to confiscate plaintiff's religious material, including his bible and family-made items of religious and sentimental value.

A.   <u>First Amendment</u>

Plaintiff brings a Section 1983 claim for these alleged deprivations of his religious rights, arguing defendants' conduct violated the First Amendment.

Defendants argue this claim must be dismissed for two reasons.  First, defendants argue plaintiff fails to satisfy an initial requirement to a First Amendment religious rights claim; namely, that plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." <u>Salahuddin v. Goord</u>, 467 F.3d 263, 274–75 (2d Cir. 2006) (citing <u>Ford v. McGinnis</u>, 352 F.3d 582, 591 (2d Cir. 2003)).  Second, defendants argue plaintiff fails to allege the specific involvement of Imam Encarnation, Dr. Woods, Hendrickson, Lt. Maxwell, and Capt. Sipple.

---

[4]      Based on these same underlying allegations, plaintiff asserts a claim under the Religious Freedom Restoration Act.  Defendants do not move to dismiss this claim, so the Court need not address it.

       i.    <u>Substantial Burden</u>

Despite defendants' assertions to the contrary, plaintiff did allege defendants' conduct substantially burdened his religious practice.  For example, plaintiff alleges: "I cannot perform certain daily prayers and rituals [without] my religious book which lays these prayers and rituals out for me in [prescribed] detail that must be adhered to."  (Doc. #2-1 at 11).

Defendants' argument that depriving plaintiff of his Wiccan bible, which includes other personal religious materials, is not a substantial burden because the prison library contains a copy of the Wiccan bible, also fails because it is based on a misunderstanding of the basis for plaintiff's substantial-burden allegation.  Plaintiff alleges a published copy of his bible alone cannot replace the religious value of his bible, which includes his own religious items.  His personal bible allegedly contained supplemental religious materials, including "spells written by family members and other items of religious sentimental value."  (Compl. at 5).  Moreover, plaintiff attaches a declaration stating that ancestry is very important in the Wiccan faith, and that Wiccan bibles are passed down through families.  Accordingly, plaintiff's specific bible "contains a 'wealth of religious material' with 'direct religious ancestry' which cannot simply be replaced."  (Doc. #2-3 at 8).

Accordingly, plaintiff has sufficiently alleged he suffered a substantial burden for this claim.

       ii.    <u>Personal Involvement</u>

Defendants argue plaintiff has failed to allege certain defendants were personally involved in the acts of which plaintiff complains.

Plaintiff alleges Imam Encarnation threw away his religious material.  This is a clear allegation of Imam Encarnation's personal involvement, and therefore defendants' his motion to dismiss this claim is denied.

Plaintiff alleges Capt. Sipple "is responsible" for violating plaintiff's unstated constitutional rights and for covering up violations committed by others.  Plaintiff argues an attached "correspondence to a prison administrator clearly establishes a basis for personal liability under § 1983" (Doc. #49 at 5), but that correspondence is illegible.  Thus, the Court is left with plaintiff's conclusory statements of liability; plaintiff does not allege Capt. Sipple performed any specific act that deprived plaintiff of his religious materials or burdened plaintiff in the practice of his religion.  However, the allegations suggest plaintiff may be able to plead Capt. Sipple's individual involvement.  Accordingly, the Court grants defendants' motion to dismiss, but grants plaintiff leave to amend his complaint regarding this claim against Capt. Sipple.

Plaintiff's only allegation with respect to defendants Dr. Woods and Hendrickson is that they failed to explain to plaintiff why various actions were taken with regard to plaintiff's bible. Plaintiff provides no basis to conclude that either defendant had an obligation to provide such explanations.  More importantly, plaintiff does not explain how these alleged failures substantially burdened his religious practices.  Accordingly, plaintiff's claim against Dr. Woods and Hendrickson is dismissed.

With respect to Lt. Maxwell, defendants argue plaintiff's allegations are conclusory. The Court disagrees in part and agrees in part.

Plaintiff alleges Lt. Maxwell held his bible for a month and required plaintiff to send his bible home or it would be destroyed as unauthorized literature, despite plaintiff's allegations that

13

it was not unauthorized.  Plaintiff also alleges Lt. Maxwell is "responsible for the taking, discriminating and violati[ng plaintiff's] religious rights."  (Doc. #49 at 3).

With respect to the allegations Lt. Maxwell held plaintiff's bible, the Court disagrees with defendants that plaintiff's allegations are conclusory.  Plaintiff alleges specific and individualized actions that if true, as the Court has already explained, substantially burdened his religious practices.

However, the Court agrees with Lt. Maxwell the allegations that he "is responsible for" various conduct is conclusory.  Plaintiff fails to allege sufficient facts to show any basis for such responsibility.  Moreover, plaintiff's voluminous supporting documentation, much of which is illegible or otherwise incomprehensible, fails to cure the deficiencies in plaintiff's pleadings and briefing.  It is not enough to assert Lt. Maxwell is responsible; plaintiff must allege specific facts which support a legal claim of responsibility.

Accordingly, this First Amendment claim against Lt. Maxwell is dismissed.  However, because plaintiff's allegations suggest a valid claim may exist, plaintiff is granted leave to amend.

     B.    <u>Equal Protection</u>

Plaintiff alleges that on August 12, 2015, Lt. Maxwell sent C.O. Vanderkooy to plaintiff's cell, and "out of pure hatred for Plaintiff's religious belief (Wicca) . . . C.O. Vanderkooy confiscated Plaintiff's Bible."  (Compl. at 4).

Defendants frame this as a retaliation claim and argue it must be dismissed because plaintiff's allegations are conclusory, especially in light of the heightened judicial skepticism towards retaliation claims.

14

The Court disagrees with defendants that plaintiff's complaint is best understood to assert a claim of retaliation.  Rather, plaintiff's allegations more properly sound in a claim of religious discrimination in violation of plaintiff's constitutional right to Equal Protection.  Plaintiff alleges defendants Lt. Maxwell and C.O. Vanderkooy harmed him because of his religious beliefs.

"[T]he Equal Protection Clause bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if such selective treatment was based on impermissible considerations such as . . . religion."  Lopez v. Cipolini, 136 F. Supp. 3d 570, 590 (S.D.N.Y. 2015) (internal quotation marks omitted) (quoting Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005)).  Thus, "to state an equal protection claim, a plaintiff must allege that he was intentionally treated differently from other similarly-situated individuals, either because of his membership in a protected class, or without any rational basis."  Washington v. Afify, 968 F. Supp. 2d 532, 540–41 (W.D.N.Y. 2013) (citing Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)).

However, even properly understood as an Equal Protection claim, defendants are correct that plaintiff's allegations are conclusory.  Plaintiff fails to allege facts in a non-conclusory manner that the disparate treatment he received was because of his religion.  For example, plaintiff alleges defendants acted out of "pure hatred" for plaintiff's religious beliefs, but provides no factual allegations to support that conclusion.  That is, plaintiff does not allege facts to demonstrate a basis for his conclusion that defendants acted out of pure hatred for his religious beliefs.

Accordingly, this claim is dismissed.

C.    RLUIPA

Plaintiff claims defendants' actions entitle him to damages under RLUIPA.  42 U.S.C. § 2000cc.  However, "RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities."  Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014).

Accordingly, plaintiff's RLUIPA claims are dismissed.

IV.    Conspiracy

Plaintiff claims all defendants conspired to deprive him of his constitutional rights and that all wrongful conduct was committed in furtherance of this conspiracy in violation of 42 U.S.C. §§ 1983 and 1985(3).

Defendants argue the intracorporate conspiracy doctrine bars this claim.

The Court agrees.

The intracorproate conspiracy doctrine generally provides "that two or more employees of a corporate entity are generally legally incapable of conspiring with each other with respect to matters within the scope of their employment."  Scott v. Goord, 2004 WL 2403853, at *13 (S.D.N.Y. Oct. 27, 2004).

All defendants were, at the time of the alleged conspiracy, employees of the New York State Department of Corrections and Community Supervision, and there is no allegation to suggest any defendant acted beyond the scope of employment.

Accordingly, plaintiff's conspiracy claim must be dismissed.

V.    Denial of Access to the Courts

Plaintiff alleges various defendants denied him access to the courts, which violated his First Amendment rights.  Plaintiff's allegations fall into two general categories: (i) defendants

16

confiscated his legal documents, and (ii) he was denied access to envelopes to send his legal mail while in SHU.  The Court addresses each category separately.

A.   Confiscation of Legal Documents

Plaintiff claims Lt. Richardson, Sgt. Laconey, and C.O. Holzapfel violated his First Amendment right of access to the courts by taking his legal work.  Defendants argue this claim must be dismissed for failure to allege any actual harm.

The Court disagrees.

Plaintiff alleges Lt. Richardson ordered Sgt. Laconey and C.O. Holzapfel "to tear plaintiff's cell apart," where Sgt. Laconey and C.O. Holzapfel confiscated "legal work, three active claims, a[n] active [New York State Criminal Procedure Law §440] motion, [and] complaints . . . [of] sexual harassment."  (Compl. at 4).  Moreover, in an attached exhibit to plaintiff's complaint, titled "First initial complaint to office of special investigation (8/6/15)," plaintiff states: "I cannot litigate my appeal in the Court of appeals, litigate my three claims in the Court of Claims, or properly defend [myself] in my sexual assault suit against an officer . . . without my deposition transcripts."  (Doc. #2 at 19).

Plaintiff alleges various important legal documents were taken from him, and that the lack of these documents prevented him from litigating his cases.  These allegations are sufficient to state a claim for denial of access to the courts.  See Morello v. James, 810 F.2d 344 (2d Cir. 1987) (reversing grant of motion to dismiss where plaintiff alleged that corrections officers took legal work-product, preventing plaintiff from "perfecting his appeal," and holding that defendants infringed on plaintiff's access to the courts by "depriving him of his pro se work product.").

Accordingly, defendants' motion to dismiss this claim is denied.

17

B.      Denial of Envelopes for Legal Mail in SHU

Plaintiff claims he was denied access to the courts because he was denied envelopes to send legal mail while he was held in SHU for forty-four days.

Defendants argue that this claim must be dismissed because plaintiff fails to allege individual involvement.

The Court agrees.

Plaintiff does not allege whether and from whom he requested such envelopes or who is responsible for this denial.  As previously stated, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

There is no allegation of personal involvement related to the denial of access to envelopes.  Accordingly, this claim must be dismissed.  However, plaintiff is granted leave to amend his complaint with respect to this claim.

VI.     Cruel and Unusual Punishment

Plaintiff claims his conditions of confinement during his forty-four days in SHU violated his Eighth Amendment right to be free from cruel and unusual punishment.[5]

Defendants argue plaintiff failed to allege personal involvement of any defendant.

In his opposition to defendants' motion to dismiss, plaintiff alleges the personal involvement of Dewitt with respect to his time in SHU.  Specifically, plaintiff alleges he expressed various concerns to Dewitt while in SHU, but Dewitt failed to act.

---

[5]      Plaintiff also asserts Eighth Amendment cruel and unusual punishment claims based on repeated cell searches when he was not held in SHU.  Defendants did not move to dismiss this claim, and thus the Court need not address it here.

18

Defendants do not address these allegations, nor do they argue that such allegations against Dewitt are insufficient to state a claim.

Accordingly, with respect to Dewitt, the motion is denied.

With respect to all other defendants, none of whom is mentioned in relation to this claim, the motion is granted.  Plaintiff is granted leave to amend his complaint to allege the individual involvement of specific defendants.

VII.   Leave to Amend

Plaintiff is granted leave to amend <u>only</u> as to the following claims that are dismissed with leave to amend: (i) the First Amendment claim against Capt. Sipple, (ii) the First Amendment claim against Lt. Maxwell for general responsibility for violations, (iii) the claim for denial of access to the courts for not receiving legal envelopes, and (iv) the claims for cruel and unusual punishment.

Plaintiff is <u>not</u> granted leave to amend as to the following claims, which are dismissed with prejudice: (i) the First Amendment claim against Dr. Woods and Hendrickson, (ii) the Equal Protection claim against Lt. Maxwell and C.O. Vanderkooy, (iii) the RLUIPA claims, and (iv) the conspiracy claim.

Plaintiff is reminded that any factual allegation in the amended complaint must be true to the best of his knowledge, information, and belief.  <u>See</u> Fed. R. Civ. P. 11(b)(3).  In the amended complaint, plaintiff shall clearly set forth the facts that give rise to each of his claims, including the dates, times, and places of the alleged underlying acts, and shall clearly identify each individual who committed each alleged wrongful act.  <u>See</u> <u>Lee v. Graziano</u>, 2013 WL 4426447, at *8 (N.D.N.Y. Aug. 15, 2013).

**The amended complaint will completely replace the existing complaint.  Therefore, plaintiff must include in the amended complaint all information necessary for any of the claims that have not been dismissed in this Opinion and Order, as well as for the claims that have been dismissed but as to which the Court has granted leave to amend.**

VIII.    <u>Remaining Issue</u>

Throughout this case, plaintiff has submitted many letters and documents, either to Judge Briccetti or Magistrate Judge Lisa M. Smith (sometimes to both).  On May 2, 2016, in response to these repeated filings, the Court ordered the plaintiff as follows:

> <u>After</u> defendants' motion to dismiss is filed, plaintiff may submit an opposition to the motion. . . . Plaintiff's opposition should <u>only</u> address the arguments defendants make in support of their motion to dismiss.  Plaintiff may file only <u>one</u> opposition to the motion.  After plaintiff has filed his <u>one</u> opposition, he will not have an opportunity to affect the Court's decision on defendants' motion to dismiss, and should not attempt to do so until the Court issues an Opinion and Order deciding the motion.
>
> <u>All other correspondence</u> from plaintiff, including (i) attempts to prove his case before the motion to dismiss has been resolved; (ii) grievances about the current conditions of his incarceration; and (iii) requests for the Court to grant plaintiff any sort of preliminary relief, <u>have not and will not be considered by the Court.</u>  The Court will <u>not</u> construe these letters as part of plaintiff's allegations in the complaint for the purposes of the motion to dismiss.  Nor will the Court construe any letters <u>after</u> plaintiff opposes the motion to dismiss when it decides whether to grant or deny the motion.
>
> <u>In short, these letters do not help plaintiff's case at all.</u>  Plaintiff should restrict his correspondence <u>only</u> to his opposition to the motion to dismiss.

(Doc. #43 at 2).

Despite this Court order, plaintiff has continued to submit further letters and documentation.  (Docs. ##50, 55, 56, 60, 64).  In addition, third-parties have submitted additional letters and documentation.  (Docs. ##57, 63).

In response to these filings, the Court directed defense counsel to look into the allegations contained therein and respond to the Court.  (Doc. #60).  Defense counsel informed the Court that the Office of Special Investigations of the New York State Department of Corrections and Community Supervision is conducting an investigation with respect to at least some of these allegations.  (Doc. #61).

Finally, the Court is aware that plaintiff is represented by counsel who has filed a case in state court regarding these issues.  On December 13, 2016, defendants removed that case to this Court, and on December 19, 2016, the removed case was assigned to Judge Briccetti as related to the present matter.  Stewart v. New York DOCCS, No. 16-cv-9513 (filed Dec. 13, 2016).

Accordingly, the allegations raised in these later letters will be addressed in due course in the context of the recently-removed case.

## CONCLUSION

The motion is DENIED as to (i) all retaliation claims, (ii) the First Amendment claim against Imam Encarnation, (iii) the First Amendment claim against Lt. Maxwell for holding plaintiff's bible; (iv) the claim of denial of access to the courts for confiscating plaintiff's legal work; and (v) the claim of cruel and unusual punishment against Dewitt.

The motion is GRANTED as to (i) the First Amendment claims against Cpt. Sipple, Dr. Woods, and Hendrickson, (ii) the First Amendment claim against Lt. Maxwell for general responsibility for violations, (iii) the equal protection claim against Lt. Maxwell and C.O. Vanderkooy, (iv) the RLUIPA claims, (v) the conspiracy claim, (vi) the claim for denial of access to the courts for not receiving legal envelopes, and (vii) the claims for cruel and unusual punishment.

Plaintiff is granted leave to amend only with respect to the following claims: (i) the First Amendment claim against Capt. Sipple, (ii) the First Amendment claim against Lt. Maxwell for general responsibility for violations, (iii) the claim for denial of access to the courts for not receiving legal envelopes, and (iv) the claims for cruel and unusual punishment.

**Plaintiff's amended complaint shall be filed by no later than January 31, 2017, in accordance with Part VII above.  Plaintiff is directed to utilize the amended complaint form attached to this Opinion and Order.**

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v United States, 369 U.S. 438, 444–45 (1962).

The Clerk is instructed to terminate the motion.  (Doc. #47).

Dated:  December 27, 2016
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge