Copy mailed by chambers 2-20-19 DH

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AL-FATAH S. STEWART,
Plaintiff,

v.

LT. RICHARDSON; SGT. LACONEY; C.O. HOLZAPFEL; C.O. C. PERRY; C.O. GENEVES; SGT. WYMAN; LT. MAXWELL; C.O. VANDERKOOY; DEPUTY SUPERINTENDENT OF ADMINISTRATION GAIL WILLIAMS; IMAM ENCARNATION, MEDIA REVIEW; DR. WOODS, EDUCATION SUPERVISOR, MEDIA REVIEW; HENDRICKSON, MEDIA REVIEW; C.O. SANDELL; C.O. SANTANA; CAPTAIN SIPPLE; GUIDANCE COUNSELOR DEWITT; all individually and in their own official capacity,
Defendants.

**OPINION AND ORDER**

15 CV 9034 (VB)

Briccetti, J.:

Plaintiff Al-Fatah S. Stewart, an inmate proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, against defendants Lieutenant ("Lt.") Richardson; Sergeant ("Sgt.") Laconey; Correction Officer ("C.O.") Holzapfel; C.O. Perry; C.O. Geneves; Sgt. Wyman; Lt. Maxwell; C.O. Vanderkooy; Deputy Superintendent of Administration Gail Williams; Imam Encarnacion;[1] Dr. Woods, an education supervisor; Hendrickson, a member of the media review committee; C.O. Sandell; C.O. Santana; Captain Sipple; and Dewitt, a guidance counselor, all of whom were employed at Sullivan Correctional Facility ("Sullivan"), a New York State Department of Corrections and Community Supervision ("DOCCS") facility.

[1] Incorrectly sued herein as "Encarnation."

Plaintiff claims defendants committed violations of federal law against him while he was incarcerated at Sullivan, alleging (i) First Amendment claims for retaliation, (ii) Eighth Amendment claims for cruel and unusual punishment, (iii) First Amendment and Religious Freedom Restoration Act ("RFRA") claims for the confiscation and prohibition of certain religious material, and (iv) a claim of denial of access to the courts. Plaintiff's other claims were dismissed in the Court's Opinion and Order dated December 27, 2017. (Doc. #66).

Before the Court is defendants' motion for summary judgment. (Doc. #122).

For the reasons set forth below, defendants' motion is GRANTED.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

Defendants submitted briefs, a statement of material facts, and declarations with supporting exhibits, and plaintiff submitted an opposition, an opposing statement of material facts, and a declaration with supporting exhibits. Together, they reflect the following relevant background.

### I. Letter and Subsequent Cell Search

At some point in 2015, plaintiff mailed a letter claiming he was wrongfully convicted to individuals at addresses on a list he found in Sullivan's law library.

On August 6, 2015, Lt. Richardson, acting captain at Sullivan, was informed by an Otisville Correctional Facility sergeant that Melissa Abt, the wife of an employee at Otisville Correctional, received a letter from plaintiff. Ms. Abt did not know plaintiff or solicit the letter. Unauthorized letters from inmates to DOCCS employees' home addresses violate DOCCS Directive 4422, which requires inmates to receive "special advance approval" before sending mail to the private residence address of "any person who is a present or former employee of the

Department . . . or . . . any member of such person's household." See DOCCS Directive 4422(III)(B)(6)(d).

Sgt. Leconey interviewed plaintiff about the letter, and plaintiff explained Ms. Abt's name and address were on a list he found in the law library. Sgt. Leconey ordered C.O. Holzapfel to search plaintiff's cell for contraband relating to the letter. C.O. Holzapfel did not find any letter-related contraband; however, he did find and confiscate other contraband, specifically, a plastic knife, an elastic stress ball, an atlas, an altered shirt and belt, and extra mirrors. He listed these items on a contraband receipt.

According to plaintiff, C.O. Holzapfel and Sgt. Leconey confiscated plaintiff's legal documents during the search. Plaintiff had at least five active legal claims pending in August 2015: a New York Criminal Procedure Law Section 440.10 motion, three actions in the New York State Court of Claims, and a complaint against a non-defendant correction officer alleging sexual assault. (Doc. #2 "Compl." at ECF 4). Plaintiff's Section 440.10 motion was dismissed; he requested leave to amend and was denied; and as of his deposition in this case, the case was on appeal. Plaintiff pursued his three Court of Claims actions and as of his deposition, was awaiting a final decision from the courts. Plaintiff settled his sexual assault complaint in 2016.

II. Religious Materials

On August 12, 2015, C.O. Vanderkooy saw several documents laying in the grass in the prison yard, containing symbols he could not decipher or understand. C.O. Vanderkooy believed the documents could contain a coded message. He found plaintiff's name and department identification number on at least one of the pages and his supervisor Lt. Hoeffling ordered a search of plaintiff's cell. During the search, C.O. Vanderkooy confiscated similar pages, which plaintiff refers to as his Arabic texts, and Buckland's Complete Book of Witchcraft by Raymond

Buckland (the "book"). The book contained a page with three illustrations depicting the construction of a dagger with a sharp object and two pieces of hollowed-out wood.

Lt. Maxwell ultimately referred the book to the media review committee, which is composed of members who determine whether items violate facility rules. The committee determined the book was contraband because it contained pages that violated DOCCS Directive 4572, which can prohibit a publication that gives "instruction in the use and manufacture of firearms, explosives, and other weapons, or depict[s] or describe[s] their manufacture." (See DOCCS Directive 4572(II)(F)).

Plaintiff claims Lt. Maxwell presented him with a choice: discard the contraband pages and keep the book or mail the book to his mother. Refusing to remove pages from the book, plaintiff sent the book to his mother. Plaintiff claims his Arabic texts were never returned, and that Imam Encarnacion destroyed them.

III. Weapon in Plaintiff's Cell

On September 9, 2015, Sgt. Leconey received an anonymous tip concerning contraband in several cells, including plaintiff's, and instructed C.O. Perry, C.O. Sandell, and C.O. Santana to conduct cell searches. In an air vent above the toilet in plaintiff's cell, C.O. Perry found a toothbrush with one end sharpened to a point and masking tape covering the other end. C.O. Genovese, the desk officer, logged the search and the weapon. C.O. Perry issued plaintiff a misbehavior report for the weapon and placed plaintiff in the disciplinary segregated housing unit ("SHU").

On October 22, 2015, a hearing officer found plaintiff not guilty of the conduct alleged in the misbehavior report, because "three different times are entered on various documents as to when the weapon was found." (Doc. #141-2 "Hearing Tr." at 48). The hearing officer noted:

"Although I find no misconduct by the staff, I cannot ignore the inconsistencies with the chain of custody of the weapon as well as the conflicting times on at least four reports." (Id.). By finding plaintiff not guilty, the hearing officer sought to "ensure that evidence collection is done correctly and by directive" and "to protect the integrity of the hearing process." (Id.).

Plaintiff spent forty-four days in the SHU while he disputed the September 9, 2015, misbehavior report. Around this time, plaintiff filed ten grievances: missing religious items (August 25); lack of access to a notary (September 1); framed with a weapon (September 30); correction officer misconduct (October 5); not enough food (October 20); denied document request (October 20), correctional officer waking him up with a high-beam flashlight (October 20); privacy concerns regarding mental health worker (October 21); request for back pay (October 22); not enough envelopes (October 22); and no-contact visitation (October 22). Plaintiff appealed five of these grievances.

## DISCUSSION

### I. Legal Standard

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby,

Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010) (citation omitted). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party has failed to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 323. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (internal citations omitted). The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury could reasonably find for him. Dawson v. Cty. of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party. Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003). If there is any evidence from which a reasonable inference could be drawn in favor of the non-moving party on the issue on which summary judgment is sought, summary judgment is improper. See Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004). The Court need only consider evidence that would be admissible at trial. Nora Bevs., Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).

## II. First Amendment Retaliation Claims

Plaintiff brings First Amendment retaliation claims alleging (i) Lt. Richardson, Sgt. Leconey, and C.O. Holzapfel retaliated against plaintiff by conducting a cell search and confiscating his personal property on August 6, 2015, after he wrote to Ms. Abt, and (ii) Lt. Richardson, Sgt. Leconey, C.O. Santana, C.O. Sandell, and C.O. Perry planted a weapon in plaintiff's cell and falsified records on September 9, 2015.

To prove a retaliation claim under the First Amendment, "a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation omitted). Regarding the second element, "only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Nelson v. McGrain, 596 F. App'x 37, 38 (2d Cir. 2015) (summary order) (quoting Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003)).[2] In view of "the ease with which claims of retaliation may be fabricated," courts "examine prisoners' claims of retaliation with skepticism and particular care." Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order).

While courts in this district have concluded that a retaliatory cell search does not constitute adverse action sufficient to support a First Amendment retaliation claim, see Salahuddin v. Mead, 2002 WL 1968329, at *5 (S.D.N.Y. Aug. 26, 2002) (collecting cases), the destruction of a "substantial amount" of permissible personal property can qualify as an adverse

[2] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

action. Smith v. City of New York, 2005 WL 1026551, at *1, 3 (S.D.N.Y. May 3, 2005) (finding an allegation of the destruction of $900 of personal property qualified as an adverse action). The property destruction must be designed specifically to deter plaintiff's exercise of his constitutional rights. Id. Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Davis v. Goord, 320 F.3d at 353.

A. August 6, 2015, Cell Search

Defendants argue the August 6, 2015, cell search and the confiscation of contraband from plaintiff's cell do not, as a matter of law, constitute adverse action sufficient to support a retaliation claim.

The Court agrees.

Assuming without deciding that plaintiff's letter to Ms. Abt was protected conduct, a cell search alone does not constitute adverse action sufficient for a retaliation claim. Salahuddin v. Mead, 2002 WL 1968329, at *5. As for plaintiff's contention that defendants confiscated and destroyed his personal property during the search, the record shows these items were contraband and were properly logged as contraband. (See Doc. #126 "Holzpafel Decl." ¶ 6 & Ex. B (contraband receipt)). See Roseboro v. Gillespie, 791 F. Supp. 2d 353, 375 (S.D.N.Y. 2011) (noting that listing items on property record shows no intent to destroy). Plaintiff does not argue these items were not contraband. Confiscation of contraband does not constitute adverse action sufficient for a retaliation claim. Because inmates are on notice that contraband is prohibited and subject to seizure, see DOCCS Directive 4910A(III), the seizure of contraband is not a penalty that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights. Therefore, the confiscation of contraband is outside the ambit of constitutional protection.

Plaintiff also argues defendants deliberately "trashed" his cell during the search and it took three days to clean his cell. (See Doc. #130 "Pl. Opp." at 2). According to plaintiff, C.O. Hoos will testify to those facts. The uncontested facts refute plaintiff's allegations: plaintiff's cell was in order two days later when he passed a compliance check, and C.O. Hoos submitted sworn testimony that he did not observe plaintiff's cell after the August 6, 2015, search.

Accordingly, plaintiff fails as a matter of law to demonstrate that defendants' actions during the August 6, 2015, cell search were adverse actions sufficient to establish a retaliation claim.

B. September 9, 2015, Cell Search

Defendants argue plaintiff fails to present evidence that raises a genuine issue of material fact as to whether defendants planted a weapon in plaintiff's cell.

The Court agrees.

Sgt. Laconey, C.O. Santana, C.O. Sandell, and C.O. Perry have offered sworn statements that they did not plant a weapon in plaintiff's cell. Furthermore, the record reflects that the search was the result of an anonymous tip; other inmate's cells were searched as a result of this tip; and plaintiff himself did not observe the search.

In the face of this evidence, plaintiff offers no evidence that raises a genuine issue of material fact. Plaintiff merely relies on unsupported and speculative assertions and promises of future witness testimony to establish that defendants planted the weapon during a cell search. For example, plaintiff claims the base of the weapon (a seven-and-half inch black toothbrush) was not sold by the prison commissary or permitted for use by inmates because of its length. But plaintiff offers no evidence or testimony to support these assertions and ignores the fact that he could have procured the toothbrush in other impermissible ways. Plaintiff also claims three

other inmates Hammock, Matthews, and Thompson will testify at trial that they witnessed C.O. Perry plant the weapon in plaintiff's cell, and plaintiff attaches affidavits from Hammock, Matthews, and Thompson. (See Doc. #129 "Pl. Decl." at 32–39). These affiants, however, do not state they witnessed an officer plant a weapon in plaintiff's cell; instead, they state they were threatened for agreeing to serve as a witness at plaintiff's prison disciplinary hearing. The Court reviewed the October 22, 2015, disciplinary hearing transcript, and no inmate testified that he witnessed an officer plant a weapon in plaintiff's cell.

Moreover, even if plaintiff had provided some evidence as to defendants' alleged actions, plaintiff fails to establish a causal connection between that adverse act and his own protected activity. Plaintiff's conflicting theories lack details as to why defendants allegedly planted the weapon. During his deposition, plaintiff claimed defendants planted the weapon because of his letter to Ms. Abt. But, as plaintiff acknowledges, defendants immediately reprimanded plaintiff for the unauthorized mailing, searched his cell, deleted the addresses from the library computer, and ordered plaintiff not to send any additional mail—an order with which plaintiff compiled. Plaintiff offers no explanation why defendants would wait a month and plant a weapon in retaliation for the mailing. Inconsistently, during his deposition, plaintiff also claimed defendants planted the weapon because he filed grievances against other officers. Yet, he provides no explanation who these grievances named and why the officers would retaliate against him.

Plaintiff relies on the temporal proximity between the September 9, 2015, cell search, and either the letter or the grievances to establish a causal connection between his protected conduct and the officer's alleged actions. Temporal proximity is circumstantial evidence of retaliation, but without more, it is insufficient to survive summary judgment. See, e.g., Ayers v. Stewart,

101 F.3d 687, 1996 WL 346049, at *1 (2d Cir. 1999) (table) (Plaintiff's "reliance on circumstantial evidence of retaliation—namely, the proximity of the disciplinary action to his complaint where no misbehavior reports were previously filed against him—does not suffice to defeat summary judgment."); Colon v. Coughlin, 58 F.3d 865, 873 (2nd Cir. 1995).

Accordingly, in the absence of evidence to the contrary, and viewing plaintiff's retaliation claims "with skepticism and particular care," see Johnson v. Eggersdorf, 8 F. App'x at 144, defendants are entitled to summary judgment on plaintiff's retaliation claims concerning the August 6 and September 9, 2015, cell searches.

III.  Eighth Amendment Cruel and Unusual Punishment Claims

Plaintiff claims that repetitive and unwarranted cell searches and poor conditions of confinement during his forty-four days in the SHU constituted cruel and unusual punishment in violation of the Eighth Amendment.

    A.  Cell Searches

Defendants argue plaintiff's allegations of three cell searches on August 6, August 12, and September 9, 2015, and a compliance check on August 8, 2015, even if true, do not constitute a constitutional deprivation.

The Court agrees.

Periodic cell searches can qualify as cruel and unusual punishment in violation of the Eighth Amendment "if the cell search lacked any legitimate penological interest and was intended solely to harass." Jones v. Harris, 665 F. Supp. 2d 384, 394–95 (S.D.N.Y. 2009). To establish an Eighth Amendment violation, a prisoner must show the searches were conducted "with the specific intent to cause plaintiff harm and that the searches in fact caused him harm." Jones v. Harris, 665 F. Supp. 2d at 395 (internal quotation omitted). Therefore, a plaintiff must

provide facts that demonstrate (i) he suffered an "objectively sufficient, serious constitutional deprivation," and that (ii) "the defendant was deliberately indifferent to the plaintiff's constitutional rights." See Davis v. Collado, 2018 WL 4757966, at *13 (S.D.N.Y. Sept. 30, 2018) (citing Smith v. Carpenter, 316 F.3d 178, 183–86 (2d Cir. 2003)).

Courts have found, however, that allegations of three searches within six weeks do not rise to the level of a constitutional deprivation. See Little v. Municipal Corp., 51 F. Supp. 3d 473, 498–99 (S.D.N.Y. 2014) (holding three searches in one month did not rise to the level of constitutional violation); Jones v. Harris, 665 F. Supp. 2d at 395 (holding three searches in six weeks did not rise to the level of constitutional violation). On the other hand, courts have found claims of daily, unwarranted searches for more than a month have constituted a sufficiently serious deprivation. See Davis v. Collado, 2018 WL 4757966, at *13.

Three cell searches in five weeks do not rise to the level of a constitutional deprivation. Therefore, plaintiff fails as a matter of law to establish a basis for his Eighth Amendment claim.

B. SHU Conditions

Defendants argue plaintiff failed to exhaust his administrative remedies regarding his claim of unsanitary living conditions in the SHU, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a).

The Court agrees.

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under . . . Federal law[] by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some

other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A grievance "must provide enough information about the conduct of which [an inmate complains] to allow prison officials to take appropriate responsive measures." Johnson v. Testman, 380 F.3d 691, 697 (2d Cir. 2004).

For a New York state prisoner to exhaust his administrative remedies, he must comply with the three steps of New York's Inmate Grievance Program by (i) submitting a complaint to the clerk of the facility's Inmate Grievance Resolution Committee ("IGRC") within twenty-one days of the alleged incident, (ii) appealing the IGRC's decision to the superintendent within seven days of the committee's response, and (iii) appealing to the Central Office Review Committee within seven days of the superintendent's response. N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5.[3]

The record reflects plaintiff filed one grievance on October 20, 2015, related to his living conditions in the SHU, in which he complained that correction officers were waking him up with a high-beam flashlight. The grievance did not mention the conduct plaintiff alleges in his complaint and in opposition to the instant motion—that he was housed next to a sexual deviant, inmates threw feces, and he was forced to sleep on the floor. Even if plaintiff's grievance could be read to account for these conditions, plaintiff did not appeal the denial of his October 20, 2015, grievance regarding the SHU, even though plaintiff appealed five other grievances filed in 2015. (See Doc. #126 "Seguin Decl." ¶ 7, 10). Therefore, plaintiff failed to exhaust his administrative remedies.

---

3 A prisoner's duty to exhaust can be excused when the administrative remedy is unavailable, or put differently, "officially on the books [but] . . . not capable of use to obtain relief." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016). Plaintiff does not argue administrative remedies were unavailable here, and indeed, he properly exhausted his administrative remedies as to many other complaints. Therefore, the Court does not address whether the remedies were unavailable.

Accordingly, defendants are entitled to summary judgment on plaintiff's Eighth Amendment claims.

IV.     First Amendment Free Exercise and RFRA Claims

Plaintiff alleges Imam Encarnacion and Lt. Maxwell violated plaintiff's free exercise of religion rights when Imam Encarnacion discarded Arabic texts and Lt. Maxwell confiscated and prohibited plaintiff from possessing Buckland's Complete Book of Witchcraft. As a preliminary matter, plaintiff's RFRA claims are dismissed, because RFRA is unconstitutional as applied to the states. See City of Boerne v. Flores, 521 U.S. 507 (1997).

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987) (internal citation omitted). To establish a claim under the free exercise clause, plaintiff "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin v. Goord, 467 F.3d 263, 274–75 (2d Cir. 2006).

An inmate's "right to practice his religion is, however, not absolute." Salahuddin v. Coughlin, 993 F.2d 306, 308 (2d Cir. 1993). Corrections facilities may restrict religious exercise so long as such restrictions are "reasonably related to legitimate penological interests." O'Lone v. Estate of Shabazz, 482 U.S. at 349. In deciding this issue, courts consider whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it," as well as whether alternative means to exercise the right exist, the effect of such an accommodation, and the absence of alternative means. Giano v. Senkowski, 54 F.3d 1050, 1053 (2d Cir. 1995) (quoting Turner v. Safley, 482 U.S. 78, 87 (1987)) (internal quotations omitted). Thus, even if plaintiff can establish defendants substantially burdened his right to practice his religion, he cannot state a free exercise claim if

defendants can show "the disputed official conduct was motivated by a legitimate penological interest." Salahuddin v. Goord, 467 F.3d at 276.  To prevail, a plaintiff must overcome the "heavy burden" that the prison officials acted within their "broad discretion." Shaw v. Murphy, 532 U.S. 223, 232 (2001).

As always, "in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, inter alia, the defendant's personal involvement in the alleged constitutional deprivation." Grullon v. City of New Haven, 720 F.3d 133, 138 (2d Cir. 2013).

A. Claim Against Imam Encarnacion

Defendants argue plaintiff's claim against Imam Encarnacion fails, because Imam Encarnacion was not involved in the confiscation or destruction of plaintiff's Arabic texts.

The Court agrees.

The record reflects that Imam Encarnacion did not confiscate plaintiff's Arabic texts or other religious materials, review them, or possess them at any time.  Indeed, plaintiff's contemporaneous letters of complaints to prison officials do not allege that Imam Encarnacion was involved in the taking of his religious materials.  In opposing defendants' motion, plaintiff argues Imam Encarnacion was involved in the media review committee and disapproved of plaintiff's religion.  In the face of sworn denials from Imam Encarnacion and other media review committee members, plaintiff offers no evidentiary support that Imam Encarnacion reviewed plaintiff's religious materials as a member of the committee or otherwise, and thus fails to raise a genuine issue of material fact as to Imam Encarnacion's personal involvement.

B. Claim Against Lt. Maxwell

Defendants argue plaintiff's claim against Lt. Maxwell fails because Lt. Maxwell had a legitimate penological interest in prohibiting plaintiff from possessing his book.

The Court agrees.

The DOCCS directive at issue here permits officials to review any publication that gives "instruction in the use and manufacture of firearms, explosives, and other weapons, or depict[s] or describe[s] their manufacture." See DOCCS Directive 4572(II)(F). This regulation is clearly related to legitimate penological concerns. See Giano v. Senkowski, 54 F.3d at 1059–60 (Calabresi, J., dissenting) (noting, in dicta, similar federal regulation that bars inmates in federal prisons from receiving publications that depict "procedures for the construction or use of weapons," 28 C.F.R. § 540.71(b) (1992), is "so obviously related to legitimate penological concerns"); see also Hanson v. N.H. State Prison Literary Review Comm., 2016 WL 4775529, at *7 (D.N.H. Aug. 17, 2016) (finding prison's prohibition on text showing martial arts maneuvers was reasonably related to legitimate penological concerns), report and recommendation approved, 2016 WL 4768792 (D.N.H. Sept. 12, 2016). At least one page in plaintiff's book violated this regulation, depicting in detail how to make a dagger with a sharp object and two pieces of hollowed-out wood.

Plaintiff argues the regulation as applied here was unreasonable because creating the weapon without access to tools would have been impossible, other available publications depict weapons, and the book is permitted in other prisons. First, plaintiff submits no admissible evidence that the book is widely available to inmates and that other publications depicting the construction of weapons are permitted. Second, crude assembly of a dagger is possible without, as plaintiff claims, "a forge, an anvil, a hammer, a file, [and] a quencher." (Pl. Decl. at 13). Most importantly, however, plaintiff's arguments fail to raise a question as to whether the prohibition of the book was outside a prison official's "broad discretion." Shaw v. Murphy, 532

U.S. at 232. It is also of note that plaintiff was offered an alternative means to retain the book by simply discarding the pages at issue. Plaintiff chose not to do so and sent the book to his mother.

The undisputed facts show plaintiff's book violated a regulation that is reasonably related to a legitimate penological objective. Therefore, Lt. Maxwell's confiscation and prohibition of the text does not constitute an actionable violation of plaintiff's rights.

Accordingly, defendants are entitled to summary judgment on plaintiff's First Amendment free exercise and RFRA claims.

V.   Denial of Access to Courts Claim

Defendants argue that plaintiff fails, as a matter of law, to demonstrate any injury resulted from defendants' alleged destruction of plaintiff's legal papers, and therefore plaintiff's denial of access to courts claim does not rise to a constitutional violation.

The Court agrees.

To establish a denial of access to courts claim, plaintiff must demonstrate not only that defendants deliberately or maliciously "took or w[ere] responsible for actions that hindered plaintiff's efforts to pursue a legal claim," but "that the defendant[s'] actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim." Davis v. Goord, 320 F.3d at 351 (internal quotation omitted).

Plaintiff alleges Sgt. Laconey and C.O. Holzapfel confiscated papers related to a Section 440.10 motion, three actions in the court of claims, and a complaint against a non-defendant correction officer alleging sexual assault. In his deposition, plaintiff states he settled the sexual assault complaint in 2016, and he appealed his Section 440.10 motion to the First Department. Further, plaintiff testified he "just went to trial for three court of claims," which were for property loss, denial of keeplock recreation, and risk of harm when he was stabbed at Green

Haven Correctional Facility. (See Doc. #126-17 "Pl. Dep." at 61). Plaintiff testified he was able to prosecute these claims. (Id. at 63).

In his opposition to the instant motion, plaintiff now argues he lost two Court of Claims actions because of the legal paperwork Sgt. Laconey and C.O. Holzapfel confiscated: case nos. 119864 (denial of keeplock recreation) and 119737 (risk of harm). (Pl. Opp. at 7).

Raised for the first time in opposition to the instant motion and contradicted by his own deposition testimony, plaintiff's arguments fail to raise a question of fact as to whether he suffered actual injury from defendants' alleged destruction of his legal documents. See Brown v. Henderson, 257 F.3d 246, 252 (2d Cir. 2001) (holding a plaintiff cannot defeat summary judgment by simply contradicting his or her own deposition testimony). Furthermore, defendants have put forth evidence contradicting plaintiff's new argument that, in case no. 119864, defendants confiscated log book entries showing plaintiff was denied recreation for one month. The court in Stewart v. New York, No. 119864 (N.Y. Ct. Cl. Aug. 22, 2017), considered twenty log book entries submitted as evidence, which indicated plaintiff refused recreation time and the court was not persuaded by a preponderance of the credible evidence that the logbook entries were altered.

Accordingly, defendants are entitled to summary judgment on plaintiff's denial of access to courts claim.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #122) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: February 19, 2019
White Plains, NY

SO ORDERED:

Vincent L. Briccetti
United States District Judge